The American Emigrant Co. v. The Iowa Railroad Land Co. and The C. R. & M. R. R. Co.

1. **Estoppel:** TAXATION: COUNTY. The bringing of an action by a county to set aside a conveyance of land made by it will not estop the county to levy taxes upon the property during the pendency of the action.

2. **Taxes:** RECOVERY OF: MISTAKE OF FACT. Certain lands were certified to defendants under a railroad grant, and while holding such title they paid the taxes levied thereon. In an action in equity to quiet title it was adjudged that the lands passed to plaintiff's grantor under the prior swamp land grant; whether or not they passed under such grant was largely a question of fact, depending upon the character of the lands: *Held*, that the plaintiff should be required to reimburse the defendants for the taxes paid prior to the determination of such question

*Appeal from Carroll District Court.*

TUESDAY, OCTOBER 28.

UNDER a claim that the title to the lands originally in controversy in this action passed to it under the swamp land grant,

the county of Carroll, in 1863, conveyed in pursuance of a pre-vious contract the said lands to the intervenor.    In 1866 the county brought an action to set aside said contract and con-veyance, and quiet the title in the county.    In March, 1877, said action was determined, the petition of the county dismissed and the title quieted.    In the meantime, and in 1875, this action was commenced by the county against the defendants, in which it was alleged they claimed title to said lands under the railroad grant, and that the county was the true owner under the swamp land grant, and the relief asked was that the defendant's title be set aside and the same quieted in the county.

The defendants pleaded that the lands passed to them under the railroad grant, and that the county was estopped from claiming title because it had assessed said lands to the defend-ants, and levied taxes thereon, which they had paid.

Thereafter, in 1876, the intervenor intervened in this action, and claimed title to the lands, under the swamp land grant and said contract and conveyance, against both the county and the defendants.    The relief asked by the intervenor being that its title "be quieted and established, and the pretended title of the defendants be set aside and held for naught."

In July, 1877, the defendants in a supplemental pleading alleged that said lands had been certified to them by the gen-eral government, under the railroad grant, and they had paid the taxes levied thereon.    That it had been determined in the aforesaid action that, as between the county and intervenor, said lands belonged to the latter, and the alternative relief was asked in case it was found the intervenor was the owner, against the defendants, that said lands be charged with the amount paid as taxes by them.

In a reply to this pleading the intervenor insisted the taxes were paid voluntarily by the defendants, and that the lands were not taxable as against the intervenor, because the county was claiming title thereto at the time said taxes were levied and paid.

The court quieted the title in the intervenor, but refused to charge the lands with the amount paid as taxes.    The first

portion of the decree is satisfactory to both parties, but the defendants have appealed from the latter.

*I. N. Kidder* and *E. S. Bailey*, for appellants.

*Harvey & Lehmann*, for appellee.

SEEVERS, J.—I. The lands were conveyed by the county to the intervenor in 1863, and from that time they were taxable, unless the county had done something which estopped it from levying taxes thereon. The taxes in question were levied in 1866, and every year thereafter until 1876, inclusive, and were paid by the defendants before they became delinquent.

1. ESTOPPEL: taxation: county.

Because the county brought an action to set aside said conveyance on the ground it had been fraudulently obtained, which was pending at the time of the levy, it is insisted the lands were not taxable. By its act the county had divested itself of the title, and until said action was determined the intervenor was the owner of a taxable title. The county did not withhold anything from the intervenor it had contracted to give, but simply asserted and exercised the right to levy taxes. This might possibly estop the county from claiming title. It was so held in *Audubon County v. Am. Em. Co.*, 40 Iowa, 460, and to the same effect is *Adams Co. v. B. & M. R. R. Co.*, 39 Id., 507. It was also held in *Iowa Railroad Land Company v. Story Co.*, 36 Id., 48, that the county could not refuse to convey as it had contracted to do, and at the same time levy and collect taxes on the land it had obligated itself to convey. Taxes levied under such circumstances were declared to be void. To the same effect is *Calhoun Co. v. Am. Em. Company*, 93 U. S., 124.

We are now asked to go a step further, and hold if the county brings an action to set aside a conveyance alleged to have been obtained by fraud, that it is estopped from levying taxes on the land conveyed. The proposition amounts to this: that if the county seeks to set aside the conveyance, it is estopped therein by a levy of taxes, and if it levies taxes it is

estopped from bringing an action to set aside the conveyance. We do not believe the estoppel should work both ways under the circumstances. The county had done all it contracted to do; it never agreed not to bring an action to set aside the conveyance on the ground of fraud. The intervenor received the conveyance subject to this contingency; the lands were, therefore, taxable. To exercise this right it may be conceded was inconsistent with the claim made to the title; but we see no reason why this should render the taxes void, or estop the county from making the levy.

The intervenor held a conveyance valid on its face; why, therefore, should it be permitted to say the lands were not taxable? Suppose the intervenor had claimed, in the action brought by the county to set aside the conveyance, that it was entitled to have its title quieted, and also that the taxes should be decreed to be void; will it be pretended both could be granted? We think not. As the former has been granted, because asked by the intervenor, it should pay the taxes.

II. The lands either passed to the county under the swamp land grant and by the conveyance to the intervenor, or to the defendants under the railroad grant. The officers of the general government charged with such duty decided they passed to the defendants under the latter grant, and certified accordingly in July, 1867. The lands were taxable in case they belonged to the defendants from the time they were earned, and as against the defendants the certificate constituted sufficient evidence of this fact.

2. TAXES: recovery of: mistake of fact.

They were assessed to the defendants, as was right and proper, because they were the owners of what may, for the purposes of this case, be styled the legal title. The intervenors were the owners of an equitable title which they appealed to the courts to sustain, and hold that it was superior to that held by the defendants. This could only be done by a showing that the lands were of the swampy character contemplated by the act of Congress; this involved the determination of a question of fact. When found by the court, and the decree entered, the title of the intervenor related back to the date of the swamp land grant.

The defendants, being the owners of a taxable title, paid the taxes. This it was their duty to do, unless they had knowledge of the swampy character of the lands, which is not pretended. The payments were, therefore, made in good faith under a belief of ownership. This was a mistake, but not of law; the mistake was one of fact, because it depended on the swampy character of the lands.

The intervenor being the owner in fact, it was its duty to see that the lands were properly assessed, and to pay the taxes. It is not pretended any efforts were made in this direction. The intervenor was bound to know the lands were taxable, and that the taxes were being paid by some one. Ordinary diligence would have developed by whom. The payments made by the defendants inured to the benefit of the intervenor.

Now the latter asks that that the title of the defendant be set aside, and that the equitable title be declared superior thereto, and refuses to reimburse the defendants for money paid for its use and by which the intervenor was directly benefitted. As the intervenor sought the interposition of equity, and thereby accomplished this result, it must do equity. This old and familiar principle applies with full force, and it would be contrary to every principle of equity and justice under the circumstances not to enforce it. The principle that he that asks equity must do equity was recognized and enforced in *Orr v. Travacier*, 21 Iowa, 68; *Hunt v. Rowland*, 28 Id., 349; and *Stewart v. Corbin*, 38 Id., 571. It will not do to say these cases were based exclusively on the statute. The contrary clearly appears.

The subsequent cases of *Everett v. Beebe*, 37 Id., 452, *Light v. West*, 42 Id., 138, and *Sexton v. Henderson*, 45 Id., 160, were based on the statute because the statutory interest and penalty was claimed and accorded. The same principle was enforced in *Nowler v. Cost*, 1 Ohio, 220, and *Redmond v. Packenham*, 66 Ill., 434, and its existence was at least clearly recognized in *Ingles v. Patterson*, 36 Wis., 373, and *White v. Rush*, 58 Mo., 105. There cannot, we think, be any distinction drawn between these cases and that at bar.

*Garrigan v. Knight*, 47 Iowa, 525, is not applicable,

because while designated an action in equity it was in fact an action at law. It is supposed the *Homestead Co. v. Valley Railroad*, 17 Wall., 153, was an action in equity. But the court found in that case the payments were made "in ignorance of the law," and it is said this is no ground of recovery. Conceding this to be true, that case is clearly distinguishable from that at bar, because we find the payments were made under a mistake of fact, and in pursuance of a duty resting, under the circumstances, on the defendants.

As being opposed to the rule referred to, counsel for the appellee cite *Reed et al. v. Tyler*, 56 Ill., 288; *Barnett v. Cline*, 60 Id., 205; and *Goodwin v. Rice*, S. C. of Minn., Northwestern Reporter, Vol. 1, No. 5, page 19. The two first cases are in accord with the rule as applied to the case at bar, as we understand them, and, to say the least, the last in no manner militates against it.

It was competent for the defendants to prove the payment of taxes by anyone having knowledge of that fact. The court did not look into the evidence and ascertain the amount chargeable on the land, and it can be much better done there than here.

The decree below is reversed, and the District Court directed to ascertain, in such manner as may be deemed best, the amounts paid and the times of payment, and make the same, with interest from the respective payments, a charge upon the lands, and provide in the decree, in some proper manner, for the payment of the same before the title shall absolutely vest in the intervenor.

                                                    REVERSED.